Nelson, Judge Rawlinson, Judge Baya, good morning again. Good morning. First and foremost, thank you for the opportunity to be here today and present this case. It's been a long time, and there's finally a light at the end of the tunnel. There appears to be a simple solution to an otherwise convoluted and complicated case. The simple solution is as follows. Simply put, the REAL ID Act changed everything and is appropriately noted by the government approximately a year ago in providing an update on current legislation to this court. Petitions for review that were filed under the transitional rules of the IRA, the Illegal Immigrant and Immigrant Responsibility Act, are now to be treated by this court as though they were filed under the permanent rules. Why is that significant? It's significant because of a decision of this court. And the decision of this court that makes that legislative change so significant is the matter of the Zarte 394 F. 3rd. 1278. And in that decision, Judge Reinhart, writing for the court, effectively overruled an older Ninth Circuit case, which is specifically at issue here, namely the matter of Schar. Was that Judge Reinhart writing in an in-bank court? I'm sorry, Your Honor. It was Judge Reinhart writing for Judge McCown, Judge Paez. Can a three-judge panel overrule a prior Ninth Circuit court? Opinion? I'm under the impression, mistaken as it were, that they can. And in the court's terms... You are mistaken. My apology. Don't follow that argument if that is a necessary predicate to your argument. Yes, Your Honor. In that decision, however, and the court's point is duly noted, in that decision the court pointed out that under the permanent rules, the matter of Schar is no longer applicable. What's your bottom line? What's your bottom line point? What are you saying? Are you saying failure to exhaust is no longer required? What's your bottom line point? The bottom line is this. The expiration of a voluntary departure period while a timely filed motion to reopen is pending before the Board of Immigration Appeals and a request for stay is also made to the administrative court. The expiration of that period prior to the adjudication of the motion is no longer a bar to the adjudication of the motion. See, what was happening is cases would be timely filed with the Board. Because of workload, what have you, the Board was unable to timely adjudicate the case. If they did not adjudicate the case during the voluntary departure period, no matter how meritorious the facts were, the case would be denied. Are you trying to challenge the underlying decision or are you here to address the denial of the motions to reopen to adjust status? I'm not sure what your argument is. With all due respect, Your Honor, I believe the point that you just raised is one and the same because the Board's denial of the motion to reopen was specifically for that purpose of adjusting status. Challenging the underlying order is a different matter than challenging the motion to reopen. The underlying order was not challenged in this case. The underlying order of the immigration court? I'm sorry, Your Honor. Yes. The order that found the petitioners deportable and denied their applications for suspension of deportation was never challenged. And we are not challenging that here. All right. So you have two motions to reopen. Correct. The first motion to reopen filed by Attorney Hiram Kwan was denied by the Board of Immigration Appeals because of the expiration of the voluntary departure period. No other reason. As a factual matter, did Allen employ the services of Attorney Kwan to file his adjustment of status application or was that done through Attorney Rich? That was done through Attorney Rich, Your Honor. All right. If I may elaborate on that ever so slightly. Attorney Rich's office was hired to do that. Attorney Rich's office, however, did not do that. Instead, Attorney Kwan's office did. Why that is, I don't know. Okay. On the first motion to reopen, this case is a little convoluted procedurally, but on the first motion to reopen, it was denied because the petitioners failed to depart voluntarily as ordered. Correct. Okay. Tell us why that was an abuse of discretion. That was not an abuse of discretion. The problem with that is that was the law at the time under Schar. The Board of Immigration Appeals concedingly appropriately denied that case, but it's an absurd result. So legally, the result is correct. Is that what you're saying? It was then, yes. And why is that not correct now? Because of the decision that you said overruled Schar? In part. More importantly, however, Your Honor, it's because of the Real ID Act. At the time, as I noted earlier, this case was filed. It was filed under the transitional rules, essentially a fancy word for a different type of jurisdiction. The Real ID Act changed all that and treated it as any petition filed before pending the Real ID Act. But that's only for cases that are pending, not for cases that had already been adjudicated. With all due respect, Your Honor, I have to disagree with you because the Real ID Act specifically states that it applies to all cases that had final orders of removal or deportation. Are you talking about for us to review? Are you talking about here at this level? Or are you talking at the BIA level? I'm talking at this level. I don't get your point. My point is that the rules changed. And even if a case was adjudicated by the Board of Immigration Appeals before the effective date of the Real ID Act, it's subject to the new rules. Are you saying that the Real ID Act says failure to depart voluntarily cannot render one ineligible for relief? Is that what you're saying? No. I'm saying that this Court's decision in Azarte, pursuant to the rules as modified by the Real ID Act, says exactly what the Court just said. This is a case of first impression. The reason it's a case of first impression is because you have a transitional rules case modified by the Real ID Act asking this Court to interpret bars that were in place because of the matter of CHAR. Did you make this argument in your brief? No, I did not. I didn't think so. I didn't think it was so rude. I wasn't certain that you were arguing in this case. And please forgive me. The reason why it wasn't articulated in the brief is because this happened two years after. Counsel, you can't make an argument here that you didn't make in your brief. It's not fair because the government never had an opportunity to prepare for this argument. I understand and respect that, however. They're the judges. I'm sorry, Judge, and I'd be delighted to brief the Court if the Court is so inclined. And I spoke to counsel. This is for shock, counsel. We've all prepared based on the information we have that was fouled. I understand that, and I'm remiss for not providing further briefing on the issue. However, it was the government that appropriately updated this Court on the new legislation, and they did that approximately one year ago. Why don't you address the argument you did make in your brief? Yes, Your Honor. Or are you abandoning it? No. I'm not abandoning it. However, I will state that although not briefed, the Court need not even deal with the issues of ineffective assistance of counsel. However, as briefed, the lawyers who or the lawyer who filed the motion to reopen for the Batoon family was constitutionally ineffective. Government makes the argument in its brief that there's no – Wait a minute. A moment ago, I thought you made a concession that we need not deal with the IAC claims, Ineffective Assistance of Counsel. Now you're arguing that they were ineffective? No. It's somewhat confusing to me. I understand and apologize, Your Honor. And what my point was is that the reason the Court need not deal with the IAC claims is because of the Real ID Act. If the Court's not so inclined to consider the Real ID Act, despite the government's updating the Court on the legislation, the IAC is still around, and it's not in the underlying order as Judge Rawlinson queried before, but rather in the motion. Simply, the former lawyer neglected to negotiate a liberally granted voluntary departure extension at that time under the old law, and as such, the case was denied. That has nothing to do with the adjustment of status application. So the relief thought is different. I mean, now they want adjustment of status, but they only requested a voluntary departure. So how are they prejudiced? Because the immigration judge did extend the voluntary departure period. The relief became available to them after that grant, and it was briefed to the Board of Immigration Appeals, but they denied it because of the ineffective assistance. All right, counsel. Your time has expired. We'll give you one minute for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. My name is Jeffrey Bernstein, and I represent the Attorney General of the United States. I want to first apologize. I'm a little under the weather, so if my argument isn't as spirited as it might otherwise be, that's the reason. First, I just want to talk about Petitioner's Counsel's stunning announcement of the morning. He came to me about two minutes before argument because I got here only about three minutes before argument to talk about it. As he was up here, I was thinking about it, and several things popped into my mind. There was no appeal of the BIA's decision denying the first motion to reopen, so perhaps he's failed to preserve that argument. And I think he's also waived. He says he only found out about the – or the Zarca case only came out two years after, he says. He briefed it, but Petitioners do in all parties have an obligation to seasonably apprise the Court and opposing counsel of arguments so that we can intelligently discuss and argue them, and a failure to do so constitutes a waiver. Counsel said that the government brought to the attention of this Court the Real ID Act. Am I mistaken? He did not in this case. In general, we advised the Court that the Real ID Act had passed, but counsel was relying on a case in the Zarca, the case of the Zarca. He's not relying on the Real ID Act as such. He's only relying on the Real ID Act insofar as a Zarca, he says, and I don't know to be honest with you, makes it germane. So if the Court – He just quoted the Real ID Act to apprise the Court that the Court had jurisdiction over what – Over certain matters. Exactly. Exactly. That's right, Your Honor. So again, if the Court thinks that there's been a – not been a failure to preserve and not been a waiver, we would certainly, you know, like the opportunity to have ourselves heard based upon a studied consideration of the argument, although we would urge the Court not to consider the argument at all. Let me move to the merits, if I may, unless the Court has further questions on this issue. Counsel makes a number of arguments in his brief which were not considered by the BIA because the arguments were not made to the BIA. And as we state in our brief, and I won't really get into it beyond referring to my brief, the Court doesn't have jurisdiction to consider those unexhausted arguments. He also didn't make the arguments in the bar complaint and would have, in any event, failed to satisfy Lozada with respect to those matters that he did not apprise the bar of. So we must examine, it seems, the validity of the Board's order through the prism of what the petitioner asked the Board to consider. They asked the Board only to find that their eligibility to seek the discretionary relief of adjustment of status based on the marriages was prejudiced by respective counsel's failure to request an extension of their voluntary departure time after the BIA's first decision in March 12, 2003, which granted them a new period of voluntary departure. The BIA clearly didn't abuse its discretion in rejecting of assertions. They said, with respect to Ederlinda King and her daughter Eileen, they said it really didn't matter whether or not an extension was asked for and didn't matter whether an extension was granted. As a matter of law, their motion to reopen would have had to have been denied because the regulations require that motions to reopen be based only upon new evidence since the issuance of the prior deportation order. And that would be the deportation order issued in March of 2003. And the basis of the motion to reopen was on a marriage, two marriages, that occurred well before the petitioner's, the Board decided the petitioner's appeal. So as a matter of law, it wouldn't have done them no good. There could have been no prejudice. They also said that the failure to earlier ask for an adjustment. Couldn't they have asked? Couldn't they have said that the marriages show that a relative wouldn't be put in hardship circumstances? Wouldn't that be a basis of discretionary review? I don't understand your question, Your Honor. Well, the suspension of deportation has some elements to it similar to removal. May I interrupt for a second, Your Honor? Because suspension is not before us. As some one of the judges pointed out, there was never an appeal of that decision and counsel concedes that. All right. Let me ask about the decision not to apply for adjustment of status. How could this possibly be a strategic decision, as the BIA found, when the alternative was to file for something they were clearly barred from by the statute? I have a number of responses to that, Your Honor. First of all, the board determined that it was a strategic call not only not to file an earlier motion to reopen. That's the only strategic determination the board implicated. And with respect to your conclusion that, and again, this is a matter that wasn't raised to the board, so it's not exhausted. But it doesn't matter because even if it were exhausted, relief couldn't be granted. There was a bar, certainly, but there was a waiver available for that bar. And there is no evidence that Mr. Rich, the attorney who advised Mr. Batun to move to the Philippine Islands for six months and then try to go through, have his visa processed through the consular office, no evidence that he wasn't aware that the waiver was available and no evidence that he didn't intend to apply for the waiver, as well as attempt to have the approved visa processed through the consulate at the Philippines. Let me just talk about what the... Let me ask you that. Isn't it also true that if an adjustment of status application is filed while deportation proceedings are pending, there's kind of a higher bar to show entitlement to adjustment? If you get married, that's exactly right. I'm talking about for the women. Well, they got married, too. I mean, the mother got married and the son got married. And, yes, there is a higher bar if you get married while you're in removal proceedings. There's a very much more difficult bar. Obviously, the son did get his visa approved, but the mother didn't and she still hasn't. So an attorney could decide, rather than going for adjustment of status with the higher bar, to seek suspension of deportation in the alternative. That's certainly true. That's certainly true. But, again, those are matters that weren't exhausted. The court doesn't have to bother with those. I just want to talk a little bit about the board's determination regarding the strategic call. Again, they said it was a strategic call to determine when to file the motion for adjustment of status. And it's clearly reasonable for Mr. Kwan not to file any earlier application for adjustment of status because an application for adjustment of status can't be granted unless there's a visa granted. And, in fact, Mr. Kwan knew that. And in his agreement with the petitioners, he agreed to file a visa application and to file a motion to reopen when the visa was approved. So, clearly, given this was a strategic, realistic, attorney-like determination, not to file an earlier motion for adjustment of status. But, actually, the assertion of ineffective assistance was not regarding the application for adjustment of status, but just for the voluntary departure. That's right. Yes. Yeah. I mean, well, I think in an unexhausted assertion, he argues that. But I'm just trying to prove to the court that it doesn't really matter, even if he had exhausted it. With respect to Alan, and also Mrs. King and her daughter were granted voluntary departure by the board, an extension of 30 days. Counsel alleges that it was quite easy to get an extension, but apparently he didn't seek to get an extension during this period of voluntary departure time. So, apparently, he used his reasoned lawyer skills to determine not to do what he expected Mr. Kwan to do, and to do what he expected Mr. Rich to do. With respect to Alan Batoon, the BIA was asked to find prejudice solely on the allegation that the attorney asked for only a 14-day enlargement of voluntary departure period, which provides current counsel, which prevented current counsel from obtaining a longer extension. As the BIA, there are two points. The BIA properly concluded that there was absolutely no proof, absolutely none, that absent the request for two weeks, the DHS would have granted a further extension. There's absolutely no proof of that. Given that, he has an established prejudice. There's also no proof that anything Attorney Rich did in asking for the 14-day extension precluded the grant of an additional extension of voluntary departure. The motion to reopen and the declarations all aver that Mr. Batoon's current counsel went to the deportation officer and asked for an extension. And the deportation officer said, well, you know, I was told by Attorney Rich that he's leaving. So I'm not going to extend. He's leaving. There's no evidence that current counsel said to him, well, you know, all bets are off. That hasn't changed. That has changed. I understand your argument. You've exceeded your time. We'll give you one minute for rebuttal. Thank you, Your Honor. Thank you again, and may it please the Court. In rebuttal, a few points. I did try to get the extensions. On the mother and daughter, by the time we were hired, the voluntary departure extension had already or the voluntary departure period had already expired. The district director will not grant extensions when it's already expired. Therefore, and as part of the administrative record, I was required to try to get the Office of Chief Counsel to do a nunk-pro-tunk voluntary departure extension. It's in writing. It's in the AR. It was never responded to. I also tried for Allen. That didn't work because the officer felt deceived based on the prior conduct of the attorney. If sloth equals strategy, you got us. There's no strategy to waiting three years to file something that someone's eligible for. There's no requirement that the visa be approved prior to remanding to the court. In fact, the BIA encourages it because it lightens caseload. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: D.W. Nelson, Rawlinson, Bea